UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS IGERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21CV1191 HEA |
| | ) | |
| CINCINNATI INSURANCE COMPANY | ) | |
| | ) | |
| Defendant, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion for Summary
Judgment, [Doc. No. 44]. Plaintiff has filed an opposition to the Motion.
Defendants have filed a reply. With leave of Court, Plaintiff filed a sur-reply. For
the reasons set forth below, the Motion is granted.

### Relevant Facts and Background

Plaintiff  was injured by an underinsured motorist on April 20, 2016 while
driving a rental car in Missouri.  Plaintiff was on his way to perform services for
Civic Disaster Recovery, LLC.

Civic Disaster Recovery, LLC was the named insured on a policy of
insurance with Defendant Cincinnati Insurance Company.  The Policy's
Declarations is styled "Virginia Business Auto Declarations." The Endorsements

attached to the policy contains numerous references to Virginia, including the

uninsured motorist provisions.  The Policy provides, in relevant part:

A. Words and Phrases with Special Meaning

1. "You" and "your mean the persons or organization shown as the named insured  . . .

6. "Covered auto" means a motor vehicle, or a "temporary substitute," with respect to which the "bodily injury" or "property damage" liability coverage of the policy applies.

8. "Insured" means any person or organization qualifying as an insured in the Who is an Insured section of this endorsement . . .

14. "Uninsured motor vehicle" means a motor vehicle . . . [w]hich is an "underinsured motor vehicle."

B. We Will Pay

"We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle."

D. Who is Insured

2. Anyone else "occupying" a "covered "auto."

F.  Conditions

The conditions applicable to this coverage are as follows:

2. Our Right to Recover from Others

If "we" make any payment, "we" are entitled to recover what "we" paid from other parties. Any person to or for whom "we" make payment must transfer to "us" his or her rights of recovery against any other party. The person must do everything necessary to secure these

2

rights and must do nothing that would jeopardize them.

3. Legal Action Against Us

No legal action may be brought against "us" until there has been full compliance with all the terms of the policy.

Words and Phrases with Special Meaning

1. "You" and "your mean the persons or organization shown as the named insured . . .

6. "Covered auto" means a motor vehicle, or a "temporary substitute", with respect to which the "bodily injury" or "property damage" liability coverage of the policy applies.

8. "Insured" means any person or organization qualifying as an insured in the Who is an Insured section of this endorsement, including the personal representative of any insured.

14. "Uninsured motor vehicle" means a motor vehicle . . . [w]hich is an "underinsured motor vehicle."

B. We Will Pay

"We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle."

D. Who is Insured

1. "You" or any "family member."

2. Anyone else "occupying" a "covered "auto".

F.  Conditions

The conditions applicable to this coverage are as follows:

2. Our Right to Recover from Others

3

If "we" make any payment, "we" are entitled to recover what "we" paid from other parties. Any person to or for whom "we" make payment must transfer to "us" his or her rights of recovery against any other party. The person must do everything necessary to secure these rights and must do nothing that would jeopardize them.3. Legal Action Against Us
No legal action may be brought against "us" until there has been full compliance with all the terms of the policy.

The declarations page contains a "Schedule of Coverages and Covered Autos" which contains the following:'

Schedule Of Coverages And Covered Autos

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.
Autos Section of the Business Auto Coverage Form next to the name of the coverage…

Uninsured Motorists        $1,000,000…

The coverage provided under the policy is described as:

[o]nly those 'autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorist Coverage.  This includes those 'autos' you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorist requirement.

The covered vehicle is listed as the 2012 Jeep Grand Cherokee with a listed zip code of  22033, which corresponds to Fairfax, Virginia. (See

https://www.unitedstateszipcodes.org/22033/. Last visited July 20, 2023).

4

At the time of the accident, Plaintiff was a Texas resident. He was driving a car rented from Hertz. The rental vehicle was registered in Nebraska.  It was rented from a Hertz location in Missouri.

The Court's jurisdiction in this matter is based on diversity of citizenship. 28 U.S.C. § 1332. Ordinarily, the Court applies the law of the forum state, unless there is a conflict of laws such that the Court must conduct an analysis of the laws of the various states. The parties dispute which state laws apply to the issues.

## Legal Standards

### Summary Judgment

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

5

*Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that]...raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

**Conflict of Laws**

A federal court exercising its diversity jurisdiction applies the choice of law rules of the state where it sits. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007).

As a threshold issue, the Court must determine whether the substantive law of Missouri or Virginia applies to the parties' dispute. Because the Policy does not have a choice of law provision, this Court must apply Missouri choice of law rules. *See Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 472 (Mo. Ct. App. 2013).

Missouri has adopted § 188 of the Restatement (Second) of Conflict of Laws (1971) "for the purpose of determining which state's law governs the interpretation of insurance contracts absent a choice of law provision." *Id.* (citing *Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 724–25 (Mo. Banc 2004)). "Pursuant to Section 188, the law of the state with the most significant relationship to the parties governs." *Id.* "The contacts to be taken into account when identifying the most significant relationship include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.*

Missouri has also adopted § 193 of the Restatement (Second) of Conflict of Laws (1971). *See, e.g.*, *Doe Run Res. Corp v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 472 (Mo. Ct. App. 2013); *Crown Ctr. Redevelopment Corp. v. Occidental Fire & Cas. Co. of N. Carolina*, 716 S.W.2d 348, 358 (Mo. Ct. App. 1986). Section 193 states:

The validity of a contract of ... insurance ... [is] determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied.

7

Restatement (Second) of Conflict of Laws § 193 (1971). According to Comment b, this section applies when it is possible to predict with fair accuracy where the risk will be located, or at least principally located, during the life of the policy. This will obviously be so when the insurance covers an immovable object ... *Id.* at cmt. b. Comment b further provides that "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." *Id.*

Under Section 193, "the validity of a contract of ... surety or casualty insurance ...[is] determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied." *Id.*

This means that the single most important factor in the choice of law analysis is the principal location of the insured risk if it can be determined. *Id.; see also Hartzler v. American Family Mut. Ins. Co.,* 881 S.W.2d 653, 655 (Mo.Ct.App.1994). The location of the insured risk in an auto insurance contract is generally the state where the vehicle is expected to be during the major portion of

8

the insurance period; for auto liability that is where the vehicle is principally

garaged. *Restatement* § 193 cmt. b; *see also Hartzler,* 881 S.W.2d. at 655.

      While Plaintiff disputes that the insured vehicle, the Jeep Cherokee, was not

necessarily located in Virginia, there is no dispute that the zip code listed in the

Policy is a Virginia zip code, which indicates that the location of the insured risk

was indeed Virginia.

      Likewise, the Policy itself states that Cincinnati Insurance Company will pay

uninsured/underinsured claims in accordance with the *Virginia Uninsured Motorist*

*Law*.  The subject policy states it is includes "Virginia Business Auto

Declarations," and the underinsured coverage endorsement lists "Virginia. " "In

our view no lay person—no reasonable insured—could look at the policy as a

whole and fail to appreciate that the state-specific endorsements are intended to

apply in the respective states. The references to [specific states] are not mere titles;

they serve to establish the structure of the policy as a whole. *Lindenwood Female*

*Coll. v. Zurich Am. Ins. Co.*, 61 F.4th 572, 575 (8th Cir. 2023).

      Plaintiff's residence bears no consideration it the determination since he is

not a Missouri citizen, thus this factor is unavailing to Plaintiff's argument that

Missouri has the most significant relationship to the issues before the Court,

whereas the location of the policy and the insured risk all indicate the insured and

Cincinnati intended the laws of Virginia to apply to any issues arising under the policy. The Court concludes Virginia law is applicable to the issues in this case.

Having so determined the applicable state law, the Court turns its analysis to whether Plaintiff's claim is covered.

The ultimate question in this case is whether the vehicle Plaintiff was driving at the time of the accident was a "covered auto" under the terms of the Policy and the UM/UIM Endorsement.

Courts in Virginia apply traditional contract principles to "interpret insurance policies ... in accordance with the intention of the parties gleaned from the words that have been used in the documents." *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993). Clear and unambiguous terms of the policy are to be construed according to their plain meaning. *TravCo Ins. Co. v. Ward*, 284 Va. 547, 554, 736 S.E.2d 321, 325 (2012). " 'No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.' " *Id.* (quoting *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc*., 271 Va. 574, 579, 628 S.E.2d 539, 541 (2006)). Exclusionary language "will be construed most strongly against the insurer." *Allstate Ins. Co. v. Gauthier*, 273 Va. 416, 641 S.E.2d 101, 104 (2007).

The Fourth Circuit has ruled in a case strikingly similar to this that specific terms should govern the interpretation of the contract over general terms. *See Levine v. Employers Insurance Company of Wausau*, 887 F.3d 623, 629-30. In *Levine*, the plaintiffs sought coverage under a "UIM endorsement that [had] a definition of 'covered auto' that [was] broader than the UIM limitation on the Policy's Declarations Pages." *Id*. at 629. The Fourth Circuit found that "Virginia follows the well-settled principle in contract law of applying specific provisions of a contract over more general provisions dealing with the same subject matter." *Id*. at 630 (citing *Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 373, 806 S.E.2d 380, 385 n.9 (2017) ("When two provisions of a contract conflict with one another, and one provision specifically addresses the dispute at hand while the other remains general, we have consistently held that the specific provision will govern over the general.")).

The Virginia Supreme Court has also dealt with similar language. Beginning from the premise that contracts should be interpreted in such a way that no word is surplusage, *Ward*, 284 Va. at 554, the Virginia Supreme Court reviewed an UIM endorsement comparing it to the declarations page and other provisions of the policy before it. *Bayer v. Travelers Indem. Co*., 221 Va. 5, 267 S.E.2d 91 (1980) (per curiam). The *Bayer* court found that allowing the broad definition of "covered auto" in the endorsement to be controlling would swallow up the other provisions

11

of the policy. *Id*. at 91 (1980) (noting that the UIM endorsement "was subject to the insuring agreements ... of the policy" and declining coverage). See also *Nationwide Mut. Ins. Co. v. Hill*, 247 Va. 78, 83, 439 S.E.2d 335, 337-38 (1994) (finding an opposite result when there was no language in the policy restricting UIM coverage to a vehicle identified or described in the policy provisions).

Here, the Declarations include the number "6" next to UIM coverage indicating a limitation on coverage to "owned autos only." This specific language of the policy must govern over more general language. *Levine*, 887 F.3d at 629-30; *Cunningham*, 294 Va. at 373 n. 9. A finding otherwise would render the symbol "6" in the Schedule of Coverages meaningless, which is a result the Court is to avoid when possible. *Ward*, 284 Va. at 554; *Zurich Am. Ins. Co. v. Beck*, No. 1:19-CV-319, 2019 WL 3084240, at *1 (E.D. Va. July 15, 2019).

In summary, there are no genuine issues of material fact as the parties only differ on the interpretation of the policy, which is a legal question. After applying Virginia law to the analysis of the Cincinnati Policy and UM/UIM Endorsement, Defendant is entitled to a judgment as a matter of law because the interpretation of the Policy which declines coverage ensures that specific provisions govern more general provisions and as few words of the policy are rendered meaningless as possible.

## Conclusion

Based upon the foregoing, the record and the undisputed facts give rise to Virginia having the most significant relationship with the issue of underinsured motorist insurance coverage. Virginia law therefore applies to this suit and under Virginia law, the claim is not covered under the policy because Plaintiff was not driving a covered auto, *i.e.*, one owned by the insured.  Summary judgment in favor of Defendant is appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 44], is granted.

A separate judgment is entered this same date.

Dated this 21st day of July 2023.


_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE